**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN LASER SKINCARE, LLC,<br>a Delaware limited liability company<br>                                        Debtor.<br><br>Employer Tax I.D. No. XX-XXX4013 | Chapter 7<br><br>Case No. 14-12685 (BLS)<br><br>**Hearing Date: Pursuant to Order Shortening Time**<br>**Objection Deadline: Pursuant to Order Shortening Time** |
| In re:<br><br>BELLUS ALC HOLDINGS, LLC,<br>a Delaware limited liability company<br>                                        Debtor.<br><br>Employer Tax I.D. No. XX-XXX0343 | Chapter 7<br><br>Case No. 14-12686 (BLS) |
| In re:<br><br>BELLUS ALC OF ALABAMA, LLC,<br>a Delaware limited liability company<br>                                        Debtor.<br><br>Employer Tax I.D. No. XX-XXX6703 | Chapter 7<br><br>Case No. 14-12687 (BLS) |
| In re:<br><br>BELLUS ALC OF ARIZONA, LLC,<br>a Delaware limited liability company<br>                                        Debtor.<br><br>Employer Tax I.D. No. XX-XXX7408 | Chapter 7<br><br>Case No. 14-12688 (BLS) |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF CALIFORNIA, LLC, a Delaware limited liability company<br>Debtor. | Case No. 14-12689 (BLS) |
| Employer Tax I.D. No. XX-XXX6712 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF COLORADO, LLC, a Delaware limited liability company<br>Debtor. | Case No. 14-12690 (BLS) |
| Employer Tax I.D. No. XX-XXX7427 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF CONNECTICUT, LLC, a Delaware limited liability company<br>Debtor. | Case No. 14-12691 (BLS) |
| Employer Tax I.D. No. XX-XXX6721 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF FLORIDA, LLC, a Delaware limited liability company<br>Debtor. | Case No. 14-12692 (BLS) |
| Employer Tax I.D. No. XX-XXX3380 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF GEORGIA, LLC, a Delaware limited liability company<br>Debtor. | Case No. 14-12693 (BLS) |
| Employer Tax I.D. No. XX-XXX5952 | |

53617/0001-11400979v1

| In re: | Chapter 7 |
| BELLUS ALC OF ILLINOIS, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12694 (BLS) |
| Employer Tax I.D. No. XX-XXX7086 | |

| In re: | Chapter 7 |
| BELLUS ALC OF INDIANA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12695 (BLS) |
| Employer Tax I.D. No. XX-XXX5197 | |

| In re: | Chapter 7 |
| BELLUS ALC OF IOWA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12696 (BLS) |
| Employer Tax I.D. No. XX-XXX2659 | |

| In re: | Chapter 7 |
| BELLUS ALC OF KANSAS, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12697 (BLS) |
| Employer Tax I.D. No. XX-XXX7501 | |

| In re: | Chapter 7 |
| BELLUS ALC OF LOUISIANA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12699 (BLS) |
| Employer Tax I.D. No. XX-XXX5443 | |

53617/0001-11400979v1

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF MARYLAND, LLC, a Delaware limited liability company <br>        Debtor. | Case No. 14-12700 (BLS) |
| Employer Tax I.D. No. XX-XXX8432 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF MASSACHUSETTS, LLC, a Delaware limited liability company <br>        Debtor. | Case No. 14-12701 (BLS) |
| Employer Tax I.D. No. XX-XXX7640 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF MICHIGAN, LLC, a Delaware limited liability company <br>        Debtor. | Case No. 14-12702 (BLS) |
| Employer Tax I.D. No. XX-XXX8276 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF MINNESOTA, LLC, a Delaware limited liability company <br>        Debtor. | Case No. 14-12703 (BLS) |
| Employer Tax I.D. No. XX-XXX7650 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF MISSOURI, LLC, a Delaware limited liability company <br>        Debtor. | Case No. 14-12704 (BLS) |
| Employer Tax I.D. No. XX-XXX7484 | |

53617/0001-11400979v1

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF NEVADA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12705 (BLS) |
| Employer Tax I.D. No. XX-XXX8179 | |
| In re: | Chapter 7 |
| BELLUS ALC OF NEW YORK, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12706 (BLS) |
| Employer Tax I.D. No. XX-XXX8793 | |
| In re: | Chapter 7 |
| BELLUS ALC OF NORTH CAROLINA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12707 (BLS) |
| Employer Tax I.D. No. XX-XXX8222 | |
| In re: | Chapter 7 |
| BELLUS ALC OF PENNSYLVANIA, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12708 (BLS) |
| Employer Tax I.D. No. XX-XXX3807 | |
| In re: | Chapter 7 |
| BELLUS ALC OF PUERTO RICO, LLC,<br>a Delaware limited liability company<br>Debtor. | Case No. 14-12709 (BLS) |
| Employer Tax I.D. No. XX-XXX9015 | |

53617/0001-11400979v1

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF SOUTH CAROLINA, LLC, a Delaware limited liability company <div align="right">Debtor.</div> | Case No. 14-12710 (BLS) |
| Employer Tax I.D. No. XX-XXX8451 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF TENNESSEE, LLC, a Delaware limited liability company <div align="right">Debtor.</div> | Case No. 14-12711 (BLS) |
| Employer Tax I.D. No. XX-XXX9025 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF TEXAS, LLC, a Delaware limited liability company <div align="right">Debtor.</div> | Case No. 14-12712 (BLS) |
| Employer Tax I.D. No. XX-XXX8458 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF UTAH, LLC, a Delaware limited liability company <div align="right">Debtor.</div> | Case No. 14-12713 (BLS) |
| Employer Tax I.D. No. XX-XXX9033 | |

| | |
|---|---|
| In re: | Chapter 7 |
| BELLUS ALC OF VIRGINIA, LLC, a Delaware limited liability company <div align="right">Debtor.</div> | Case No. 14-12714 (BLS) |
| Employer Tax I.D. No. XX-XXX6772 | |

53617/0001-11400979v1

| | |
|---|---|
| In re:<br><br>BELLUS ALC OF WASHINGTON, LLC,<br>a Delaware limited liability company<br>        Debtor.<br><br>Employer Tax I.D. No. XX-XXX9059 | Chapter 7<br><br>Case No. 14-12715 (BLS) |
| In re:<br><br>BELLUS ALC OF WISCONSIN, LLC,<br>a Delaware limited liability company<br>        Debtor.<br><br>Employer Tax I.D. No. XX-XXX6790 | Chapter 7<br><br>Case No. 14-12716 (BLS) |

**MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER APPROVING STIPULATION WITH BELLUS FUNDING ALC, LLC AS AGENT FOR FUNDING, USE OF CASH COLLATERAL AND <u>GRANTING OF RELEASES</u>**

Alfred T. Giuliano, chapter 7 trustee (the "**Trustee**") of American Laser Skincare, LLC and its related debtors (collectively, the "**Debtors**"), by and through his undersigned proposed counsel and pursuant to sections 105(a), 363 and 364 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), hereby moves (the "**Motion**") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), (a) approving a stipulation (the "**Stipulation**") by and between the Trustee, on the one hand, and Bellus ALC Funding, LLC, as agent (the "**Agent**") for the Lenders (as defined below), on the other hand, for funding, use of cash collateral and granting of releases, and (b) authorizing the Trustee to take all necessary or desirable steps to effectuate the Stipulation, which is attached to

7

the Proposed Order as <u>Exhibit 1</u>.  In support of the Motion, the Trustee respectfully states as

follows:

<div align="center">**JURISDICTION**</div>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 105(a) and

363 of the Bankruptcy Code.  Such relief is also warranted under Bankruptcy Rule 9019.

<div align="center">**FACTUAL BACKGROUND**</div>

4.      The Debtors, headquartered in Farmington Hills, Michigan, were formerly a

leading provider of laser hair removal, skin rejuvenation, and other minimally-invasive cosmetic

procedures across a nationwide network of 136 locations throughout 25 states.  Due to, among

other reasons, operational shortcomings and macroeconomic deterioration, which created

substantial financial difficulties, the Debtors were forced to cease operations on November 14,

2014.

5.      On December 4, 2014 (the "**Petition Date**"), the Debtors filed voluntary petitions

in this Court commencing cases for relief under Chapter 7 of the Bankruptcy Code (the

"**Chapter 7 Cases**").

6.      Prior to the Petition Date, the Lenders (as defined below) extended credit and

other financial accommodations to the Debtors pursuant to that certain Credit Agreement dated

as of February 3, 2012 (as has been amended, modified, renewed, or supplemented from time to

time, the "**Credit Agreement**")[1] among (i) American Laser Skincare, LLC (f/k/a Bellus ALC

---

[1] The Credit Agreement along with any related agreements, instruments and documents (and any amendments or modifications thereto) are collectively referred to herein as the "**Loan Documents**".

<div align="center">8</div>

Acquisition, LLC) as administrative borrower and each of the other borrowers thereto (collectively, with the administrative borrower, the "**Borrower Debtors**"), (ii) Bellus ALC Holdings, LLC  (f/k/a Bellus ALC Investments 1, LLC) as guarantor (the "**Guarantor Debtor**"), (iii) the lenders that are from time to time parties to the Credit Agreement (collectively, the "**Lenders**"), and (iv) the Agent, in its capacity as administrative agent to the Lenders.

7.       The Debtors' obligations to the Lender Parties under the Loan Documents are secured by, among other things, perfected, first-priority liens on substantially all of the assets of the Debtors, including without limitation, all accounts, chattel paper, documents, deposit accounts, general intangibles (including payment intangibles and software), goods (including inventory, equipment, and fixtures), instruments, investments, permits, money, cash and cash equivalents, supporting obligations and letter-of-credit rights, all other personal property owned by any Debtor and all proceeds of the foregoing (collectively, the "**Collateral**").[2] Agent perfected the security interests in the Collateral by, among other things, filing various UCC financing statements, copies of which have been provided to the Trustee.

8.       By reason of the foregoing described liens and security interests of the Lender Parties, the Trustee, on behalf of the Debtors' estates, is not entitled to receive or use any existing cash collateral or proceeds hereafter generated from the Collateral (collectively, the "**Cash Collateral**") without the Lender Parties' consent or adequate protection being afforded to the Lender Parties for their interests in the Cash Collateral in accordance with section 363 of the Bankruptcy Code.

9.       Desirous of maximizing value for both the Lender Parties and the Trustee's constituency, the Debtors' unsecured creditors (including the Lender Parties), the parties to the

---

[2] The Collateral includes the pledge of 100% of the Guarantor Debtor's equity interests in the Borrower Debtors.

<div align="center">9</div>

Stipulation believe that a consensual arrangement in connection with the liquidation of the

Debtors' remaining assets is mutually beneficial to both the estates and the Lender Parties.  The

Stipulation represents, in part, a compromise of issues relating to the Trustee's use of Cash

Collateral and wind-down of the Debtors' estates.

## RELIEF REQUESTED

10.    By this Motion, the Trustee respectfully requests the Court enter the Proposed

Order approving the Stipulation and authorizing the Trustee to take all actions necessary or

desirable to effectuate the Stipulation.

## SUMMARY OF STIPULATION

11.    Pursuant to Bankruptcy Rule 9019, the following are the principal terms of the

Stipulation:[3]

a.    <u>Acknowledgments</u>.  The Trustee acknowledges, confirms and

agrees that as of the Petition Date, the Debtors were indebted to the Lender Parties in the

aggregate amount of $124,085,185.46 with respect to loans and financial

accommodations made under the Loan Documents, together with accrued and accruing

interest, fees, costs and expenses (collectively, the "**Pre-Petition Obligations**").  The

Trustee further acknowledges that the Pre-Petition Obligations were secured by valid,

perfected, enforceable and non-avoidable first priority security interests granted by the

Debtors to the Lender Parties in the Collateral (including, without limitation, the Cash

Collateral), which security interests are not subject to challenge, subordination or

avoidance under any provision of the Bankruptcy Code or otherwise.

---

[3] The following represents a summary of the principal terms of the Stipulation.  In the event of an inconsistency between the below summary and the Stipulation, the Stipulation shall govern.  All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation.

b.      <u>Funding of Wind-Down of Estates</u>.  Within two (2) business days of the full execution of the Stipulation, the Agent shall advance to the Trustee funds in the amount of $125,000, which advance shall be used by the Trustee as an advance (the "**First Administrative Funding Advance**") to satisfy administrative costs and expenses incurred in administering these chapter 7 cases in accordance with the Stipulation.  If the Challenge Period (as defined below) expires with no Challenge(s) (as defined below) having been timely initiated or asserted by the Trustee, the Agent shall advance to the Trustee additional funds in the amount of $125,000, which advance shall be used by the Trustee as an advance (the "**Second Administrative Funding Advance**," and together with the First Administrative Funding Advance shall be referred to herein collectively as, the "**Administrative Funding Advances**") to satisfy administrative costs and expenses incurred in administering these chapter 7 cases in accordance with the Stipulation.  The Administrative Funding Advances shall not be used to satisfy administrative costs or expenses associated with the investigation, filing, prosecution, collection and/or resolution of any Challenge (as defined below) against the Released Parties (as defined below).  Provided there is no Challenge(s) timely initiated or asserted by the Trustee, the wind-down of the Debtors' estates and the administrative expenses of these cases shall be funded from (i) the Administrative Funding Advances, the Harlow Advances,  and the Limited Guaranty (as defined below), and (ii) the proceeds generated by the sale, liquidation or other disposition of the Debtors' assets and/or any other recoveries or proceeds obtained by the Trustee, including, but not limited to, any amounts recovered or obtained by the Trustee in connection with the liquidation of the Debtors' estates, the assets thereof or any causes of action, including any and all estate causes of action (which

shall include all causes of action under Chapter 5 of the Bankruptcy Code) (the "**Liquidation Proceeds**").

   c. <u>Employment and Payment of Consultants</u>.  Regardless of whether or not a Challenge is asserted prior to the expiration of the Challenge Deadline, Agent shall advance funds to compensate John Harlow for services rendered to the estates through and including January 31, 2015 (the "**Harlow Advances**").  No portion of the Harlow Advances shall be used to compensate John Harlow for any time spent in connection with the investigation, filing, prosecution, collection and/or resolution of any Challenge (as defined below) against the Released Parties (as defined below).  The Administrative Funding Advances and Harlow Advances shall be reimbursable to the Agent in accordance with the waterfall set forth in the Stipulation.

   d. <u>Cooperation and Consultation By and Between Trustee and Agent</u>. The Agent shall provide reasonable cooperation to the Trustee in connection with the liquidation of the Debtors' assets, which cooperation shall include providing any necessary documents or records in the Agent's custody or control that may be necessary to liquidate an asset and that are not otherwise privileged or confidential.  Among other things, to the extent the Trustee elects to liquidate the Collateral in the clinics, the Trustee shall consult with the Agent regarding the selection of a liquidator to liquidate any estate assets, including equipment owned by the Debtors and/or any of the Debtors' leased equipment; <u>provided</u>, <u>however</u>, the Trustee has sole and absolute discretion on which liquidator is selected.

53617/0001-11400979v1

e.    <u>Sale of Leased Equipment</u>.  To the extent the Trustee seeks to sell some or all of the Debtors' leased equipment, the Trustee shall follow the procedures set forth in paragraphs 24-25 of the Stipulation.

f.    <u>Investigation Period</u>.  The Trustee shall have until January 30, 2015 (the "**Challenge Period**") to investigate any and all claims or causes of action of any nature whatsoever against the Released Parties (collectively, a "**Challenge**").  If a Challenge is asserted prior to the expiration of the Challenge Deadline, the Agent is not required to fund the Second Administrative Funding Advance and is not required to provide the Limited Guaranty (as defined below) and such Limited Guaranty is null and void and of no force and effect.  Upon the expiration of the Challenge Period with no timely Challenge(s) filed by the Trustee, and subject to the obligations contained in the Stipulation, the Trustee on behalf of the Debtors and each of their bankruptcy estates and each of their respective predecessors, successors and assigns (the "**Releasing Parties**"), forever release the Agent (in its individual capacity and in its capacity as Agent), Versa Capital Management LLC, the Lenders, present and former officers and directors of the Debtors and each of their respective affiliates, subsidiaries, members, shareholders, managers, officers, directors, employees, agents, representatives, and attorneys (the "**Released Parties**") from all actions, causes of action, claims for relief, suits, petitions, or demands at law or in equity, and from any and all other claims for or allegations of liability, debts, contracts, torts, promises, obligations, damages, attorneys' fees, costs, interests or expenses, whether fixed or contingent, asserted or unasserted, known or unknown, suspected or unsuspected, including without limitation any chapter 5 causes of action, that the Releasing Parties ever had, now have or hereafter can, shall or may have

13

against the Released Parties for, upon or by reason of any act, omission, representation,

amounts due or that could ever become due, or any other matter, cause or thing arising

out of, related to or in connection with the Debtors, Loan Documents, any action or

inaction of the Released Parties pre-petition or post-petition, or these chapter 7 cases

from the beginning of the world until the date the Stipulation becomes effective;

provided, however, the Releasing Parties do not release any Released Party from any

act(s) of that Released Party that is judicially determined to constitute fraud or willful

misconduct.

> g. <u>Distribution of Liquidation Proceeds (No Challenge)</u>. Assuming no

Challenge is initiated by the Trustee, the Liquidation Proceeds, if any, shall be disbursed

according to the following waterfall:

> > (a) <u>First</u>, to satisfy any chapter 7 administrative costs and expenses that have not already been satisfied by the Administrative Funding Advances or the Harlow Advances;
> >
> > (b) <u>Second</u>, to the Agent in full repayment of the Administrative Funding Advances and the Harlow Advances;
> >
> > (c) <u>Third</u>, to holders of allowed unsecured claims (including holders of allowed priority unsecured claims) against the Debtors' estates other than the Lender Parties up to $1,000,000;
> >
> > (d) <u>Fourth</u>, (i) 70% to  holders of allowed unsecured claims (including holders of allowed priority unsecured claims) against the Debtors' estates other than the Lender Parties, and (ii) 30% to the Agent on account of the Pre-Petition Obligations,  until such time as the amount disbursed to holders of allowed unsecured claims (including holders of allowed priority unsecured claims) against the Debtors' estates other than the Lender Parties equals $5,000,000;
> >
> > (e) <u>Thereafter</u>, (i) 70% to the Agent on account of the Pre-Petition Obligations, and (ii) 30% to holders of allowed unsecured claims (including holders of allowed priority unsecured claims) against the Debtors' estates other than the Lender Parties.

h.    <u>Distribution of Liquidation Proceeds (Challenge)</u>.  Assuming a Challenge is initiated by the Trustee, the Liquidation Proceeds, if any, shall be disbursed according to the following waterfall:

> (a) <u>First</u>, to satisfy (i) any chapter 7 administrative costs and expenses that have not already been satisfied by the First Administrative Funding Advance or the Harlow Advances and (ii) the First Administrative Funding Advance and the Harlow Advances on a *pro rata* basis; <u>provided</u> <u>however</u>, that, the Liquidation Proceeds, if any, shall not be used to satisfy administrative costs or expenses associated with the investigation, filing, prosecution, collection and/or resolution of any Challenge(s) against the Released Parties;
>
> (b) <u>Second</u>, to holders of allowed unsecured claims (including holders of allowed priority unsecured claims and the Agent, on behalf of the Lenders, on account of any deficiency claims associated with the Pre-Petition Obligations).

i.    <u>Limited Guaranty</u>.  Assuming no Challenge is initiated by the Trustee, the Agent shall guarantee payment of allowed chapter 7 administrative expenses not otherwise satisfied by the Administrative Funding Advances, the Harlow Advances and/or Liquidation Proceeds up to $250,000 (the "<u>Limited Guaranty</u>").  For the avoidance of doubt, if a Challenge is initiated or asserted, the Agent is not required to provide the Limited Guaranty and such Limited Guaranty is null and void and of no force and effect. The Limited Guaranty is a "last out" limited guarantee and will only be available upon the Trustee providing documentary evidence to the Agent showing that the Administrative Funding Advances, the Harlow Advances and/or Liquidation Proceeds are insufficient to satisfy the administrative costs and expenses incurred in administering these chapter 7 cases and that no other assets (including any cash on hand) are available to satisfy such administrative expenses.  The Limited Guaranty shall not be used to satisfy any administrative costs or expenses associated with the investigation, filing, prosecution, collection and/or resolution of any causes of action against the Released

15

Parties (as defined below).  The Trustee shall not request that the Agent provide any funding from the Limited Guaranty for a period of six (6) months from the execution of this Stipulation.  To the extent any portion of the Limited Guaranty is funded by the Agent and the Trustee thereafter liquidates any Collateral of the Lender Parties or recovers any Liquidation Proceeds, the proceeds thereof shall first be paid to the Agent in reimbursement of any portion of the Limited Guaranty that has been previously funded.

        j.    <u>Section 506(c) and 552 Waivers</u>.  Except as otherwise set forth in the Stipulation, no charges, costs or expenses of administration shall be imposed against the Lender Parties or the Collateral (including the Cash Collateral) under Bankruptcy Code Sections 105, 506(c), or 552, or otherwise, for any cost or expense of administration or for goods or services provided from the Petition Date or any other purpose.  The financial obligations of the Lender Parties are capped at the maximum aggregate amount of the Administrative Funding Advance, the Harlow Advance and the Limited Guaranty

## CASH COLLATERAL AND FINANCING DISCLOSURES

    12.    Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a trustee seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing.  The trustee must also justify the inclusion of such provisions.  Set forth below are the disclosures required in accordance with such rules:

        a.    Local Rule 4001-2(a)(i)(A) requires a trustee to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional

<div align="center">16</div>

financing. **The Stipulation does not cross-collateralize any prepetition debt.**

b. Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **The Trustee has investigated the validity, perfection and amount of the Lenders' prepetition liens and has determined such liens and security interests are properly perfected. As such, the Stipulation provides that the Trustee acknowledges that the Pre-Petition Obligations were secured by valid, perfected, enforceable and non-avoidable first priority security interests granted by the Debtors to the Lender Parties in the Collateral (including, without limitation, the Cash Collateral), which security interests are not subject to challenge, subordination or avoidance under any provision of the Bankruptcy Code or otherwise. The Stipulation provides that the Trustee may investigate the Released Parties and assert a Challenge on or before January 31, 2015.**

c. Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(l)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **The Stipulation provides for a waiver of the Trustee's rights under section 506(c) of the Bankruptcy Code, except as set forth in the Stipulation.**

d. Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The Stipulation does not contain any provisions that grant liens on the Avoidance Actions.**

e. Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The Stipulation does not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.**

f. Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a

18

creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **Given that these are Chapter 7 cases, there is no committee here**.

g.  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The Stipulation does not provide for the priming of any secured lien without the consent of that lienholder**.

h.  Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case. **The Stipulation sets forth the waterfall for the distribution of Liquidation Proceeds**.

i.  Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **The Stipulation contains no such waivers or modifications of the automatic stay.**

j.  Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate. **The Stipulation contains no such waivers or modifications**.

## BASIS FOR RELIEF REQUESTED

13.     Section 363 of the Bankruptcy Code provides that the trustee may not use, sell, or lease cash collateral unless each entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the

53617/0001-11400979v1

provisions of section 363 of the Bankruptcy Code.  11 U.S.C. § 363.  Here, the Trustee satisfies section 363 of the Bankruptcy Code and should be authorized to use the Lenders' Cash Collateral as the Lender has consented to such use under the terms and conditions of the Stipulation.

14.     Section 364(b) of the Bankruptcy Code provides that the Court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt allowable under section 503(b)(1) of this title as an administrative expense.  11 U.S.C. § 364(b).  The Trustee has an immediate need to access the funds provided by the Stipulation to permit the orderly liquidation of the Debtors' assets and administration of these Chapter 7 cases.  Assuming a Challenge is initiated by the Trustee, the Agent on behalf of the Lenders shall receive an allowed administrative expense claim under section 503(b)(1) of the Bankruptcy Code for the First Administrative Funding Advance and the Harlow Advances.  Assuming a Challenge is initiated by the Trustee, the Liquidation Proceeds, if any, shall be disbursed to satisfy (i) any chapter 7 administrative costs and expenses that have not already been satisfied by the First Administrative Funding Advance or the Harlow Advances, and (ii) the First Administrative Funding Advance and the Harlow Advances on a *pro rata* basis.  For these reasons, the Trustee has satisfied Section 364(b) of the Bankruptcy Code and the funding provided by the Stipulation should be approved.

15.     Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16.　　In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). The bankruptcy court will consider four criteria in applying this balancing test: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (internal citation omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (relying on the same four factors to determine the fairness, reasonableness, and adequacy of a settlement). "The court must also consider 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" Marvel, 222 B.R. at 249 (internal citation omitted). The ultimate inquiry is whether, in the court's discretion, the compromise embodied in the settlement "is fair, reasonable, and in the best interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

17.　　As applied in the instant case, the Martin factors strongly support this Court's approval of the Stipulation as in the best interest of the estates. The Trustee has an immediate need for funding from the Agent and use of Cash Collateral to liquidate the Debtors' assets and administer these Chapter 7 Cases. The Trustee has reviewed the Pre-Petition Obligations and have determined that the Agent has a properly perfected lien and security interest in the Collateral. As such, the Trustee submits that the costs, risks and disruption that would arise from litigation concerning the validity, priority and extent of the Agent's liens in the

Collateral would provide no benefit to the estates.  With respect to potential claims against the Released Parties, the Stipulation provides for an adequate period for the Trustee to conduct an investigation.

18.     Further, the Agent has agreed to fund these Chapter 7 Cases out of its collateral in exchange for certain accommodations on the sharing of Liquidation Proceeds.  In the Trustee's judgment, the material benefits associated with an efficient and cost-effective wind-down outweigh litigation and any protracted disputes.  Given the circumstances, the Stipulation is fair and reasonable and should be approved.

19.     Moreover, the consensual resolution and efficient wind-down would conserve the Debtors' resources, financial, and otherwise, and avoid the attendant cost and delay associated with the rather complex factual and legal issues that would have to be addressed in any litigation.  Any such litigation would inevitably entail substantial professional costs to the Debtors' estates, as well as requiring a significant commitment of time and resources on the part of the Trustee, his professionals and the Debtors' few remaining employees, at a time when they should be focused on winding down the Debtors' estates.  Accordingly, this factor strongly supports approval of the compromise.

20.     Another key factor that weighs heavily in favor of approving the Stipulation is this Court's consideration of the best interest of the Debtors' creditors.  The Agent, which maintains the largest general unsecured claim on account of its deficiency claim, supports the Stipulation.  Further, the unsecured creditors will benefit from approval of the Stipulation because it allows for the potential of a recovery in case where the general unsecured creditors are woefully "out of the money."  Moreover, the Stipulation will provide for an efficient liquidation and wind-down of all of the Debtors' assets and prosecution of Avoidance Actions and other

actions for the benefit of the Debtors' creditors.  This represents a substantial savings for the creditors by obviating further litigation, thereby saving the expenses attendant to such litigation.

21.     In sum, the Stipulation meets the statutory and applicable case law standards for the approval of a settlement and thus should be approved.  The Stipulation serves the purpose of consensually resolving a potential dispute in this bankruptcy case, thus avoiding the dissipation of the Debtors' valuable time and resources in litigation.  Finally, the Stipulation is the product of extensive, arm's-length negotiations between the parties.

## NOTICE

22.     Notice and a copy of this Motion has been provided to: (i) the Office of the United States Trustee, (ii) the Office of the United States Attorney for the District of Delaware; (iii) counsel for the Agent; (iv) counsel for the Debtors, (v) all other known parties asserting a lien against the Debtors' estates; and (vi) any parties requesting notice in these cases pursuant to Bankruptcy Rule 2002, by facsimile, overnight courier and/or hand delivery.  In addition, the Trustee shall provide Notice to the Debtors' landlords and equipment lessors that a copy of this Motion shall be served on them by overnight courier and/or hand delivery upon request.  In light of the nature of the relief requested herein, the Trustee respectfully submits that no other or further notice is necessary.

## NO PRIOR REQUEST

23.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter the

Proposed Order, in the form attached hereto as **Exhibit A**, (a) approving the Stipulation, (b)

authorizing the Trustee to take all necessary or desirable steps to effectuate the Stipulation, and

(c) granting such other and further relief as the Court may deem just and proper.


Dated: January 13, 2015
Wilmington, Delaware

                              **COLE, SCHOTZ, MEISEL,**
                              **FORMAN & LEONARD, P.A.**

                    By:    _/s/ Norman L. Pernick_
                              Norman L. Pernick (No. 2290)
                              500 Delaware Avenue, Suite 1410
                              Wilmington, DE  19801
                              Telephone:  (302) 652-3131
                              Facsimile:  (302) 652-3117

                              and

                              Ryan T. Jareck
                              Court Plaza North, 25 Main Street
                              Hackensack,, NJ 07601
                              Telephone: (201) 489-3000
                              Facsimile:  (201) 489-1536

                              *Proposed Counsel For Alfred T. Giuliano,*
                              *Chapter 7 Trustee*