# Exhibit A

**(Proposed Order)**

53617/0001-11520143v1
February 16, 2015

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN LASER SKINCARE, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 14-12685 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: Pursuant to Order Shortening Time<br>Objection Deadline: Pursuant to Order Shortening Time |

### ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363 AUTHORIZING AND APPROVING THE SALE OF ASSETS OF THE ESTATES TO ABH RESOURCES, INC. FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

Upon the motion (the "**Motion**")[2] of Alfred T. Giuliano, chapter 7 trustee (the "**Chapter 7 Trustee**") of American Laser Skincare, LLC and its related debtors (collectively, the "**Debtors**"), for entry of an order under Bankruptcy Code sections 105(a) and 363 and Bankruptcy Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing and approving the sale of certain assets of the Debtors to ABH Resources, Inc., free and clear of liens, claims, interests and encumbrances; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Laser Skincare, LLC (4698); Bellus ALC Holdings, LLC (0343); Bellus ALC of Alabama, LLC (8558); Bellus ALC of Arizona, LLC (8562); Bellus ALC of California, LLC (8573); Bellus ALC of Colorado, LLC (8570); Bellus ALC of Connecticut, LLC (8574); Bellus ALC of Florida, LLC (8579); Bellus ALC of Georgia, LLC (8578); Bellus ALC of Illinois, LLC (8583); Bellus ALC of Indiana, LLC (8587); Bellus ALC of Iowa, LLC (8593); Bellus ALC of Kansas, LLC (8594); Bellus ALC of Louisiana, LLC (8605); Bellus ALC of Maryland, LLC (8432); Bellus ALC of Massachusetts, LLC (8606); Bellus ALC of Michigan, LLC (8608); Bellus ALC of Minnesota, LLC (8560); Bellus ALC of Missouri, LLC (8585); Bellus ALC of Nevada, LLC (8566); Bellus ALC of New York, LLC (8569); Bellus ALC of North Carolina, LLC (8572); Bellus ALC of Pennsylvania, LLC (8581); Bellus ALC of Puerto Rico, LLC (8576); Bellus ALC of South Carolina, LLC (8580); Bellus ALC of Tennessee, LLC (8588); Bellus ALC of Texas, LLC (8592); Bellus ALC of Utah, LLC (8602); Bellus ALC of Virginia, LLC (8603); Bellus ALC of Washington, LLC (8599); Bellus ALC of Wisconsin, LLC (8607). The Debtors' mailing address is 4555 Hallwood Court, Farmington Hills, MI 48335.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

§§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances and it appearing that no other or further notice need be given; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED.

2. All objections to the Motion or the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The relief requested in the Motion is in the best interests of the Debtors' estates and their creditors, and proper notice of the sale of the Assets has been provided by the Chapter 7 Trustee.

4. The APA is approved and the Chapter 7 Trustee may sell the Assets and enter into the transaction contemplated by the APA by conducting a private sale to the Buyer in accordance with Bankruptcy Rule 6004(f).

5. The standards of 11 U.S.C. § 363 are satisfied, and pursuant to 11 U.S.C. § 363(b), the Chapter 7 Trustee is authorized to perform his obligations under and comply with the terms of the APA, and consummate the sale contemplated thereby, pursuant to and in accordance with the terms and conditions of the APA.

53617/0001-11520143v1
February 16, 2015

6.      Pursuant to Section 363(f) of the Bankruptcy Code, the Chapter 7 Trustee may sell the Assets free and clear of all liens, claims, interests and encumbrances ("**Liens and Claims**") of any kind or nature whatsoever, with the exception of the Assumed Liabilities, with any Liens and Claims to attach only to the proceeds of the sales with the same priority, validity, force and effect as they existed with respect to the Assets before the closing on the sale.  All holders of Liens and Claims who did not object or who withdrew their objections to the sale are deemed to have consented to the sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Liens and Claims are adequately protected — thus satisfying section 363(e) of the Bankruptcy Code — by having their Liens and Claims, if any, attach to the proceeds of the sale that are ultimately attributable to the property against or in which they assert Liens and Claims.

7.      Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the APA, as applicable, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and to the greatest extent allowed by applicable law, Buyer shall not have successor or vicarious liabilities of any kind or character, including under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including liabilities on account of warranties, intercompany loans and receivables between the Debtors, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

53617/0001-11520143v1
February 16, 2015

8. Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Order or the APA, all persons and entities, including all debt holders, equity security holders, lenders, trade creditors, litigation claimants and other creditors, and to the greatest extent allowed by applicable law, governmental, tax and regulatory authorities, holding liens, claims, encumbrances and interests of any kind or nature whatsoever in or against all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the Debtors' business prior to the Closing Date or the transfer of the Assets to the Buyer in accordance with the APA, hereby are forever barred from asserting against Buyer, its successors or assigns, their property or the Assets, such persons' or entities' liens, claims, encumbrances and interests in or against the Assets, including the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any lien or other claim against Buyer, its successors, its assets, or their properties; (d) asserting any setoff (except for setoffs asserted prior to the commencement of these cases) or right of subrogation of any kind against any obligation due Buyer or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets. Nothing in this Order, the

5

APA or related sale documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) approval or (f) clearance, or the discontinuation of any obligation thereunder, unless such transfer or assignment of such is effected in accordance with all applicable legal requirements under police or regulatory law.

9.  As of the Closing Date, Buyer shall be liable for and shall assume Seller's obligations to patients for unfulfilled treatments or procedures purchased by patients at the Acquired Locations (the "**Assumed Treatment Obligations**"); provided, however, that the Assumed Treatment Obligations shall be limited to providing the unfulfilled treatments or procedures only and under no circumstances shall Buyer be obligated to refund any funds to the patients for unfulfilled treatment obligations; provided, further, however, that the Assumed Treatment Obligations shall not include other patient liabilities such as product liability or malpractice claims associated with the Acquired Locations.

10. Notwithstanding anything to the contrary in the APA, patients associated with the Assumed Treatment Obligations at the Acquired Locations are excepted from the provision in the APA that no person or entity other than the parties to the APA will be given any legal or equitable right, remedy, or claim under or in respect to the APA.

11. The transactions contemplated by the APA are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the APA shall not affect the validity of the APA, unless such authorization and such APA is duly stayed pending such appeal. Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

6

12. The sale and transfer of the Assets to the Buyer pursuant to the APA constitute a legal, valid and effective transfer and shall vest Buyer with all right, title and interest of the Debtors in and to the Assets.

13. The Buyer of the Assets shall serve as a successor-in-interest to the Debtors' privacy policy and utilize the "personally identifiable information" as that term is defined in Section 101(41A) in exactly the same fashion as the Debtors.

14. Within 45 days of the closing of the sales, the Buyer shall provide notice to customers of the Acquired Locations via email (i) that the Buyer is assuming the Assumed Treatment Obligations (as defined in the APA); (ii) contact information for the Buyer; and (iii) if the Buyer is opening a new clinic or clinics, address information for such clinic or clinics. To the extent an email address is not available for certain patients whose treatments are included in the Assumed Treatment Obligations, the Buyer shall make reasonable efforts to provide such notice to those patients by alternative means.

15. With respect to the personally identifiable information ("**PII**") that pertains to each Acquired Location, as articulated in paragraphs 1-23 ("**Clinic Information**") of the ombudsman report attached hereto as Exhibit A [Docket No. 154] (the "**Ombudsman Report**"),[3] the Chapter 7 Trustee on behalf of the Debtors and the Buyer shall comply with the following recommendations:

    a. The Debtors and Buyer shall identify Customers for each relevant clinic with respect to whom Buyer assumes patient treatment liability.

---

[3] All capitalized terms used but not otherwise defined in paragraphs 15 – 17 of this Order shall have the same meanings ascribed to them in the Ombudsman Report.

7

b.  The Debtors shall transfer to Buyer the Clinic Information identified in paragraph 15(a) of this Order. Buyer may use and disclose this PII in accordance with the Debtor's Notice of Privacy Practices.

c.  The Debtors shall also transfer to Buyer the PII pertaining to Customers of the relevant clinics other than the Customers who are entitled to additional treatment. Buyer shall maintain this PII in accordance with applicable data retention legal requirements, and shall not use or disclose the PII other than to comply with such applicable record retention obligations or as otherwise required by law.

d.  Within 90 days of the sale, Buyer shall develop and implement a written records retentions policy/schedule; the records retention policy/schedule must be submitted to the Ombudsman for review and approval.

e.  Within 120 days of the sale, Buyer shall develop and implement a written information security program that includes administrative, technical, and physical safeguards that complies with applicable legal requirements; the program shall be submitted to the Ombudsman for review and approval.

f.  Within 60 days of the sale, Buyer shall issue a HIPAA-compliant notice of privacy practices to all Customers whose PII Buyer obtains. The notice shall be provided by any of the following methods: (1) in hard copy; or (2) in person; or (3) by email to the extent an email address is available for the Customer, or (4) by other means permitted by HIPAA, and posted on any website that the Buyer operates in connection with the acquired clinics. In addition to compliance with HIPAA and relevant state law requirement, the notice shall inform Customers of the ownership change of the clinics.

g.  Buyer may request Customers' opt-in authorization to use or disclose their PII for purposes other than those specified in the recommendations. To do so, Buyer must employ a HIPAA-compliant authorization form. Buyer must submit any such authorization form for review and approved by the Ombudsman. Buyer may send such authorizations request to Customers in combination with the notices of privacy practices described in paragraph 15(f) of this Order.

h.  For the avoidance of doubt, Buyer may not contact any Customers via mobile telephones using automated means as provided in the Contact Us Form, unless Buyer obtains consent of the Customers, as required by the Telephone Consumer Protection Act (TCPA) and implementing Federal Trade Commission and Federal Communication Commission Regulations. The consent included in the Contact Us Form shall be deemed expired, not valid, and not transferable to the Buyer.

16. With respect to PII contained on corporate servers, as specified in the Ombudsman Report, the Chapter 7 Trustee on behalf of the Debtors' estates shall ensure that the information is securely deleted from the servers before the servers are decommissioned, but no later than 30 days following the sale. The Chapter 7 Trustee shall report to the Ombudsman to confirm the secure destruction of the information and shall file an affidavit with the Court confirming the secure destruction.

17. Within 60 days of the date of entry of this Order, the Buyer is required to provide a statement to the Ombudsman on notice to the Office of the United States Trustee that it has fully complied with the conditions imposed to protect the PII.

18. This Order and the APA shall be binding upon, and shall inure to the benefit of, the Debtors' estates, the Chapter 7 Trustee, the Buyer and their respective successors and assigns.

19. Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or any other applicable rule, the terms and conditions of this Order shall be effective immediately upon entry.

20. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2015

                                                  The Honorable Brendan L. Shannon
                                                  Chief United States Bankruptcy Judge

53617/0001-11520143v1
February 16, 2015